UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



THEODORE BRANDON EDWARDS,

                                        Plaintiff,

        -against-

ORANGE COUNTY; DR. FELDMAN; K.
GEORGY, R.N.; and ORANGE REGIONAL
MEDICAL CENTER,

                                        Defendants.

17-cv-10116 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Theodore Brandon Edwards ("Plaintiff"), proceeding *pro se*, commenced this

action on December 27, 2017 against Defendants Orange County,[1] Dr. Feldman, K. Georgy, R.N.

("Nurse Georgy") (collectively, the "County Defendants"), and Orange Regional Medical Center[2]

("ORMC") (the "Complaint"). (Compl., ECF No. 2.) Plaintiff alleges various claims related to

medical treatment he received at ORMC and related information disclosures that occurred while

he was detained at Orange County Jail. (*Id.*)

Presently before the Court are Defendants' motions to dismiss the Complaint.[3]

(ECF Nos. 45 & 49.) For the following reasons, the motions are GRANTED.

## **BACKGROUND**

The following facts are taken from the Complaint and are accepted as true for this motion.

On October 24, 2017, Plaintiff was at ORMC[4] for testing to determine whether he had

cancer in his left testicle. (Compl. p. 3.[5]) To conduct this testing, ORMC staff determined that

---

[1]    On April 13, 2018, the Court replaced Defendant Orange County Jail Medical Department with Orange
       County. (ECF No. 11 at 2.)
[2]    Plaintiff sued ORMC as "Orange County Medical Regional." (Compl. p. 1-2.)
[3]    Plaintiff did not file an opposition to the motions. Accordingly, the motions are deemed unopposed.
[4]    In the Complaint, ORMC is described by Plaintiff as "the medical facility at Crystal Run." (Compl. p. 4.)
[5]    The Complaint contains multiple page threes. To the extent that page three of the complaint is cited in this
       Opinion, it refers to the page three that contains the Complaint's "Facts" section.

they would administer various liquids to Plaintiff.  (*Id.*)  Prior to the test, Plaintiff had inquired about why he had to ingest these liquids.  (*Id.*)  According to the "primary nurse," the liquids were necessary to allow doctors to take an in-depth look at his left testicle.  (*Id.*)

Plaintiff was then "loaded up" with approximately one gallon of an unspecified thick clear liquid.  (*Id.*)  Thereafter, Plaintiff was given a second liquid that gave him a "warm uncomfortable feeling" and subsequently caused him to pee on himself.  (*Id.*)  Plaintiff quickly buttoned up because he was embarrassed.  (*Id.*)

After receiving these liquids, Plaintiff was escorted by two officers and placed on a machine to receive a CT Scan.  (*Id.*)  At that time, he was given a "2nd dose [i]ntravenously,"[6] which gave Plaintiff a strange feeling and caused him to feel like he was going to vomit.  (*Id.*)  Plaintiff explains that he was on the table of the "radiation machine" for a long time.  (*Id.*)  Plaintiff has been "waiting ever since" for the results of the CT Scan test.  (*Id.*)  He described himself as frustrated and worried, noting that he experienced symptoms of radiation sickness such as vomiting, deteriorating teeth, fatigue, and nausea.  (*Id.*)

A few weeks later (sometime during November 2017), Plaintiff saw Dr. Feldman at Orange County Jail.  (*Id.*)  According to Plaintiff, Dr. Feldman came out to the waiting area and told him in front of another inmate that "the Dr. and staff" at ORMC had taken a CT Scan of Plaintiff that had nothing to do with his assessing cancer in his left testicle.  (*Id.*)  Eventually, an "elder nurse" came out from the back room and scolded Dr. Feldman for publicly talking to Plaintiff about his personal medical information.  (*Id.*)  Later that day, Plaintiff ran into Sergeant Colby and explained his situation to him.  (*Id.* p. 3-A.)  Sergeant Colby told Plaintiff about the Health Insurance Portability and Accountability Act ("HIPAA") and noted that Dr. Feldman had violated another inmate's privacy within the previous two weeks.  (*Id.*)

---

[6]      Plaintiff does not specify what he was given.

At some unspecified time, Nurse Georgy called Plaintiff down "and double talked to" him about going to see the "crystal run [] doctor again" before Plaintiff's sentencing on December 14, 2017. (*Id.*) When Plaintiff raised skepticism about whether Nurse Georgy could ensure that he was seen by doctors at ORMC prior to his sentencing date, Nurse Georgy allegedly said, "Watch me." (*Id.*) Plaintiff avers that he has yet to find out his results to date (*i.e.*, as of December 15, 2017). (*Id.* pp. 3-A, 7.)

Later, on December 15, 2017, Plaintiff saw Dr. Feldman for a checkup. (*Id.* p. 3-A.) At that time, Plaintiff brought up the topic of his test results. (*Id.*) Dr. Feldman confirmed that the testing he received on October 24, 2017 had nothing to do with his testicles. (*Id.*) Rather, Dr. Feldman indicated, staff at ORMC had only checked his intestine and pelvis, not his testicles. (*Id.*)

## LEGAL STANDARD

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In fact, courts must interpret the *pro se* plaintiff's pleadings "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted).

Nevertheless, a *pro se* pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

Liberally construed, the Complaint appears to allege four causes of action against the various Defendants, namely claims against (1) Dr. Feldman for a violation of Plaintiff's HIPAA rights; (2) Dr. Feldman and Orange County for a violation of Plaintiff's constitutional right to privacy; (3) against Nurse Georgy, Orange County, and ORMC for deliberate indifference to medical needs; and (4) against ORMC for medical malpractice. The Court considers each of these claims below.

### I.     Federal Claims

### A.  HIPAA

One of the primary remedies Plaintiff explicitly seeks in the Complaint is compensation "for [his] HIP[A]A Law – Rights." (Compl. p. 4-A.) It is true that "HIPAA generally provides for the confidentiality of individually identifiable health information." *Vetere v. City of New York*, No. 19-CV-9665 (CM), 2019 WL 6684071, at *3 (S.D.N.Y. Dec. 5, 2019). However, courts in this circuit have regularly held that HIPAA and its regulations do not provide for either an express or implied private right of action. *See, e.g.*, *Orr v. Carrington*, No. 3:18cv1986(MPS), 2019 WL 176958, at *2-3 (D. Conn. Jan. 11, 2019) (collecting cases); *Rodgers v. Rensselaer Cty. Sheriff's Dep't*, No. 1:14-CV-01162 (MAD/TWD), 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) ("It is well established that, because there is no private right to action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim."); *Rosado v. Herard*, No. 12 Civ. 9843(PGG)(FM), 2014 WL 1303513, at *4 (S.D.N.Y. Mar. 25, 2014) ("HIPAA does not provide for either an express or implied private right of action." (quoting *Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*,

4

639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009)). Instead, a "plaintiff's sole remedy for an alleged HIPAA violation is to lodge a written complaint with the Secretary of Health and Human Services, through the Office for Civil Rights, who has the discretion to investigate the complaint and impose sanctions." *Orr*, 2019 WL 176958 at *3. Because Plaintiff has no private right of action under HIPAA, the Court GRANTS the County Defendants' motion to dismiss Plaintiff's HIPAA claim, with prejudice.

### B. Section 1983 Claims

Although Section 1983 is not referenced in the Complaint, when liberally construed, the Complaint does appear to bring constitutional claims under Section 1983 against (1) Dr. Feldman and Orange County for breach of Plaintiff's right to privacy and (2) Nurse Georgy and Orange County for deliberate indifference to Plaintiff's medical needs. Additionally, the Complaint appears to lodge constitutional claims against Orange County and ORMC based on the conduct of its employees. The Court addresses these claims below.

#### 1. Claims Against Individual Defendants

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Paterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York.*,

No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Here, as noted above, the Court can discern claims under Section 1983 against Dr. Feldman and Nurse Georgy, respectively. Regarding Plaintiff's claims against Dr. Feldman, the Court construes his HIPAA-related allegations as also setting forth a claim for infringement of his right to privacy under the Fourteenth Amendment. For Nurse Georgy, the Court can discern a claim for deliberate indifference to medical needs related to her purported failure to schedule a follow-up appointment with ORMC. (*See* Compl. p. 3-A.) For their part, the County Defendants argue that, to the extent he pleads claims under Section 1983 against Dr. Feldman and Nurse Georgy, Plaintiff has failed to plausibly allege facts that would support a claim for relief. (Cty. Defs. Mem. of Law in Support of Mot. to Dismiss ("Cty. Defs. Mot."), ECF No. 51, at 6-9, 14-15.) As will be explained, the Court agrees.

   a. *Right to Privacy Under the Fourteenth Amendment*

Under the Fourteenth Amendment's due process clause, individuals are protected from "'arbitrary [governmental] intrusions into their medical records,' and from the 'disclosure of [related] personal matters.'" *Talarico v. Port Auth. of N.Y. and N.J.*, 367 F. Supp. 3d 161, 169 (S.D.N.Y. 2019) (quoting *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018); *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994)). This protection, however, is "not absolute." *Hancock*, 882 F.3d at 65. Rather, "[a] constitutional violation only occurs when the individual's interest in privacy outweighs the government's interest in breaching it." *Id.* As it pertains to "executive action that does not involve penological interests," courts must ask "whether the [government's intrusion into privacy] was so 'arbitrary' as to 'shock the conscience.'" *Id.* at 66. "'[W]hether executive action shocks the conscience,' in turn, 'depends on the state of mind of the government actor and the context in which the action was taken.'" *Talarico*, 367 F. Supp. 3d at

169 (quoting *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005)). "'[M]ere negligence' is not enough—indeed, 'only the most egregious official conduct' shocks our consciences—but how egregious conduct has to be in order to be shocking depends on a context-specific balancing." *Hancock*, 882 F.3d at 66. In general, "[s]tronger privacy interests will be required to hold executive actors liable who acted with less culpable mental states." *Id.*

In determining the strength of an individual's privacy interest in his or her medical condition, courts will "proceed on a case-by-case basis . . . examin[ing] all relevant factors." *Matson v. Bd. of Educ. of City School Dist. of N.Y.*, 631 F.3d 57, 66-67 (2d Cir. 2011). Although the "strength of this interest requires taking into account the seriousness of the condition and stigma associated with it[,] . . . other factors may also be relevant." *Hancock*, 882 F.3d at 67. Moreover, "identifying the strength of the individual interest in privacy never ends the analysis." *Id.* at 68. Instead, "[a] court applying a shocks-the-conscience test must always examine the executive branch's interest in breaching that privacy." *Id.* Where an inmate's lessened privacy rights are involved, an intrusion into privacy interests will be valid "if it 'is reasonably related to legitimate penological interests.'" *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 199); *accord Hancock*, 882 F.3d at 66 n.3.

Here, the Court need not assess the strength of Plaintiff's alleged privacy interest because Plaintiff has failed to plead the requisite mental state needed to establish a constitutional infringement. As alleged, Plaintiff maintains that Dr. Feldman came out into the waiting area and disclosed issues related to the testing performed by staff at ORMC. (Compl. p. 3.) Liberally construed, these facts could plausibly give rise to an inference that Dr. Feldman acted carelessly and negligently. But, as currently alleged, this conduct does not shock the conscience of the Court. *See, e.g. Jackson v. Ramirez*, No. 1:15-cv-617-GHW, 2016 WL 796854, at *9 (S.D.N.Y. Feb. 22, 2016) (concluding that defendant's disclosure to a parole officer that plaintiff was diagnosed with

bipolar disorder did not amount to "conscience-shocking conduct," and instead "at most" amounted to allegations that defendant "acted negligently in disclosing [] information to [the] parole officer"); *Spencer v. Bellevue Hosp.*, No. 11 Civ. 7149 (CM), 2012 WL 1267886, at *9 (S.D.N.Y. Apr. 12, 2012) (concluding that a defendant "loudly announc[ing] confidential information regarding [plaintiff's] stay at Bellevue [Hospital]," without more, did not shock the conscience of the court); *see also Davenport v. Nussbaumer*, No. 5:17-CT-3015-FL, No. 5:17-CT-3016-FL, 2019 WL 4678776, at *6 (E.D.N.C. Sept. 25, 2019) (concluding, in a summary judgment context, that defendant's disclosure of "plaintiff's medical complaints to other inmates" at most "establishe[d] negligent conduct . . . not 'gratuitous disclosure'"). Therefore, the Court GRANTS the County Defendants' motion to dismiss the claim against Dr. Feldman for breach of Plaintiff's right to privacy.

  b. *Deliberate Indifference*

Plaintiff does not explicitly state in his Complaint whether he is a detainee or inmate, although he does refer to his upcoming sentencing. (*See* Compl. p. 3-A). Regardless of his classification, however, the Constitution requires that prison officials "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment," whereas an inmate's claims arise under "the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). In either case, to set forth a Section 1983 claim for conditions of confinement, a plaintiff must show that an individual "acted with deliberate indifference to the challenged conditions." *See Sanders v. City of New York,* No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June

25, 2018). This deliberate indifference test contains an objective prong and a subject prong. *Darnell*, 849 F.3d at 29.

Under the debilitate indifference test, "[t]he objective prong is the same under either [the Eighth or Fourteenth] analysis: It requires that the deprivation at issue be, 'in objective terms, sufficiently serious.'" *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *9 (S.D.N.Y. Sept. 18, 2019). A plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 30. "There is not 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id.* at 29 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). When, as here, a plaintiff has alleged deliberate indifference to medical needs that is premised on "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone" if analyzing the nature of the deprivation. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Conversely, the subjective prong differs between the Fourteenth and Eighth Amendment analyses. Under the Eighth Amendment, a convicted prisoner must show that a correction officer "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety; the official must both [have been] aware of facts from which the inference could [have been] drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference." *Farmer*, 511 U.S. at 837. On the other hand, under the Fourteenth Amendment, a plaintiff must plausibly allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive

risk to health or safety." *Strange v. Westchester Cty. Dep't of Corr.*, No. 17-CV-9968 (NSR), 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018) (internal quotations omitted). This standard is "defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts . . . have subjected the detainee to a substantial risk of harm." *Darnell*, 849 F.3d at 30.

Here, assuming without deciding that the subjective prong is satisfied, Plaintiff has failed to meet the objective prong of the deliberate indifference test. Indeed, there is no allegation that the delay in obtaining a follow-up appointment with doctors at ORMC caused or worsened Plaintiff's condition, nor can the Court infer any harm from the facts as presently pleaded. *See Cuffee v. City of New York*, No. 15cv8916 (PGG) (DF), 2017 WL 1232737, at *9 (S.D.N.Y. Mar. 3, 2017), *adopted by*, 2017 WL 1134768 (S.D.N.Y. Mar. 27, 2017) (explaining that plaintiff's deliberate indifference claims failed because he had "given simply no indication as to how the delay in his treatment . . . worsened his condition"). In the absence of any harm, the Court GRANTS Defendants' motion to dismiss the deliberate indifference claim against Nurse Georgy, without prejudice.

### 2. Claims Against Orange County

Liberally construing the Complaint, Plaintiff brings claims against Orange County seemingly based on the misconduct of Dr. Feldman or Nurse Georgy. The County Defendants, however, contend that Plaintiff has failed to establish that Orange County can be held liable for the conduct of either individual. (Cty. Defs. Mot. 10-11.) The Court agrees.

Under *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978), a plaintiff must demonstrate "that the municipality itself caused or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). This generally requires plaintiff to allege that "(1) an official custom or policy [] (2) subjected [him or her] to (3) a denial of a constitutional right." *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y.

2011); *see also Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on

a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is

required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or

statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused

the constitutional injury.").  To establish an official custom or policy, a plaintiff must allege one

of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*White v. Westchester Cty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21,

2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).  Here,

even had Plaintiff sufficiently pleaded that either Dr. Feldman or Nurse Georgy committed a

constitutional harm, Plaintiff has not alleged any facts for this Court to conclude that any of the

individual defendants were acting pursuant to some official policy, custom or usage, or that any

individual defendant acted due to a failure by Orange County to provide adequate training or

supervision.  Without facts to plausibly establishing liability under *Monell*, the Court GRANTS

County Defendants' motion to dismiss claims against Orange County, without prejudice.

### 3.  Claims Against Orange Regional Medical Center[7]

Plaintiff appears to bring Section 1983 claims against ORMC.  (*See* Compl. p. 3.)  ORMC,

however, argues that it is not a state actor under Section 1983 for purposes of Plaintiff's claims,

---

[7]     Plaintiff also sued a John Doe Urologist, presumably associated with ORMC, who has not yet been identified
as of the issuance of this Opinion.  As will be explained below, any claims against John Doe Urologist, to
the extent he is employed by ORMC, are dismissed with prejudice because Plaintiff has failed to establish
that ORMC or its employees are state actors under Section 1983.

such that Plaintiff cannot state a cognizable claim against ORMC. (ORMC Mem. of Law in Support of Mot. to Dismiss, ECF No. 47, at 4-5.) The Court agrees.

"It is well established that 'private conduct' is not controlled by Section 1983[] unless the 'private entity's challenged actions are fairly attributable to the state.'" *Jones v. Beth Israel Hosp.*, No. 1:17-cv-3445-GHW, 2018 WL 1779344, at *3 (S.D.N.Y. Apr. 12, 2018) (internal quotations omitted) (quoting *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014)). A private entity acts under color of state law under Section 1983 "when '(1) the State compelled the conduct [the compulsion test], (2) there is a sufficiently close nexus between the State and the private conduct [the close nexus test or joint action test], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the public function test].'" *McGugan*, 752 F.3d at 229 (internal quotations omitted) (quoting *Hogan v. A.O. Fox Memorial Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009)). "It is not enough, however, for a plaintiff to plead state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the *activity that caused the injury*' giving rise to the action." *Jones*, 2018 WL 1779344 at *3 (quoting *Sybalski v. Indep. Grp. Home Living Program*, 546 F.3d 255, 257 (2d Cir. 2008)).

Here, Plaintiff has not established that ORMC is a state actor. To begin, under the compulsion test, Plaintiff has not shown that the State exercised any overt or covert coercive power, or otherwise provided such significant encouragement to, ORMC or employees related to Plaintiff's medical testing and treatment. *See id.* at *3. Nor could he. It is well established "that while the law authorizes a private hospital to perform its duties, it does not compel the hospital's personnel specifically to do anything 'any more than repossession laws are passed because states want to encourage creditors to repossess their debtors' goods.'" *Id.* (quoting *McGugan v. Aldana-Bernier*, No. 11-cv-0342 (TLM), 2012 WL 1514777, at *4 (E.D.N.Y. Apr. 30, 2012))).

Plaintiff likewise fairs no better under close-nexus test.  As an initial matter, the mere fact that hospitals may be highly regulated by the State is not sufficient to establish intimate involvement.  *Id.* at *4.  Furthermore, the Complaint is devoid of any facts revealing that the State was "intimately involved" with any of the medical decisions taken by ORMC's staff.  *Id.*

Finally, there is no indication that Plaintiff has plausibly pleaded, or could plausibly plead, that ORMC has occupied a public function by providing Plaintiff with medical testing for his potential cancer.  Indeed, "private hospitals, though 'clearly affected with a public interest, . . . have not been traditionally associated with sovereignty, and have long been relegated to the private domain, rather than treated as 'traditionally the exclusive prerogative of the State.'"  *Jackson v. Barden*, No. 12 Civ. 1069 (KPF), 2018 WL 340014, at *17 (S.D.N.Y. Jan. 8, 2018) (internal quotations omitted) (quoting *Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 429 (2d Cir. 1977)).

Overall, regardless of the test applied, Plaintiff has failed to establish that ORMC and its employees are state actors under Section 1983.  Moreover, even if it granted leave to amend, the Court cannot conclude that Plaintiff could plausibly allege that the mishandling of medical testing conducted by ORMC's employees amounts to state action.  Therefore, the Court GRANTS ORMC's motion to dismiss Plaintiff's Section 1983 claim against it, with prejudice.

## II.    <u>State Claims</u>

As part of the Complaint, Plaintiff brings a claim for medical malpractice, which, although not explicitly stated, appears to be lodged against ORMC and/or Defendant John Doe.  (*See* Compl. p. 2.)  Under New York Law, "[t]he essential elements of a medical malpractice claim are a departure from good and accepted medical practice and evidence that such departure was a proximate cause of plaintiff's injury."  *Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 252 (S.D.N.Y. 2013) (quoting *Williams v. Sahay*, 783 N.Y.S.2d 664, 666 (App. Div. 2d Dep't 2004)).  Here, in essence, Plaintiff's medical malpractice claims are premised on the fact that staff at

ORMC erroneously evaluated Plaintiff's "Intestine and pelvis" rather than his left testicle, have delayed in providing him results, caused Plaintiff discomfort through the use of dye liquids, and exposed Plaintiff to "symptoms of radiation sickness" stemming from the CT Scan itself. (Compl. pp. 3-3-A.) Although it liberally construes the allegations in Complaint, the Court concludes that Plaintiff's malpractice claim is plainly deficient. As to his contentions of discomfort, "radiation sickness," and delay, the Complaint is devoid of any facts that reveal, or allow this Court to infer, that these "harms" were a result of deviations from accepted medical practices. Conversely, though erroneous testing could plausibly give rise to an inference of negligence, Plaintiff has failed to allege that this purported mistake caused him to suffer an actual injury. Without more facts in support, Plaintiff's medical malpractice claim must be dismissed at this juncture.

In any event, even if Plaintiff had sufficiently pleaded his medical malpractice claims, the Court alternatively declines to exercise supplemental jurisdiction over Plaintiff's state-law claims at this time, given that Plaintiff has failed to sufficiently plead any claims arising under federal law. *See In re Merrill Lynch Ltd. Partnerships Lit.*, 154 F.3d 56, 61 (2d Cir. 1998) ("[The Second Circuit] and the Supreme Court have held that when [] federal claims are dismissed the 'state claims should be dismissed as well.'"); *Bennett v. Care Corr. Sol. Med. Contractor*, No. 15 Civ. 3746 (JCM), 2017 WL 1167325, at *10 (S.D.N.Y. Mar. 24, 2017) (dismissing state-law claims where Court would only retain jurisdiction over these claims based on supplemental jurisdiction).

Therefore, given Plaintiff's failure to plausibly allege a claim for medical malpractice and the Court's alternative declination to exercise supplemental jurisdiction over the claim, the Court GRANTS Defendants' motions to dismiss the medical malpractice claim, without prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss the Complaint are GRANTED. Plaintiff is granted to leave to file an Amended Complaint as to any claims that have not been

dismissed with prejudice. If he chooses to do so, Plaintiff will have until March 23, 2020. to submit his Amended Complaint. An Amended Civil Rights Complaint form is attached to this Order. Defendants are then directed to answer or otherwise respond by May 7, 2020. If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, the remainder of Plaintiff's Complaint will be dismissed with prejudice.

The Clerk of Court is directed to terminate the motions at ECF Nos. 45 & 49. The Clerk is also directed to mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF and to file proof of service on the docket.

Dated: February 10, 2020
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

# COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.  LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.  PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                Middle Initial              Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                      State                  Zip Code

## III.  PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☐  Convicted and sentenced prisoner

☐  Other: _____

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 4:

| | | |
|---|---|---|
| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

# V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____                   _____
Dated                                              Plaintiff's Signature

_____
First Name                    Middle Initial       Last Name

_____
Prison Address

_____
County, City                          State                    Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: _____