UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THEODORE BRANDON EDWARDS,

                Plaintiff,

  -against-

DR. FELDMAN, et al.,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/27/2021

17-cv-10116 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Theodore Brandon Edwards ("Plaintiff") commenced this *pro se* action on or about December 27, 2017, against Dr. Feldman ("Feldman"), R.N. K. Georgy ("Georgy"), Orange County Medical Regional ("OCMR" or "ORMC"), and Orange County ("OC").[1] On July 17, 2019, Defendant OCMR moved to dismiss the Complaint, and on July 18, 2019, Defendants Feldman, Georgy, and OC moved to dismiss the Complaint. (ECF Nos. 45 & 49.) On February 10, 2020, the Court issued an Opinion & Order dismissing the Complaint and granting Plaintiff leave to amend as to his claims that were dismissed without prejudice. (ECF No. 53.) On March 30, 2020, Plaintiff filed an Amended Complaint against Defendants Feldman and OCMR. (ECF No. 54), which Defendants again moved to dismiss. (ECF Nos. 71 & 77.) For the following reasons, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

---

[1] Plaintiff also brought this action against O.C.J. Medical Dept and Dr. John Doe. (ECF No. 2.) The action was terminated against O.C.J. Medical Dept on April 13, 2018 (ECF No. 11) and, following a Valentin Order (ECF No. 11) and the Court's direction to Plaintiff to provide Defendant Orange County with a medical release form (ECF No. 15), Plaintiff failed to amend the Complaint with the identify of Dr. John Doe.

1

Plaintiff is currently a "convicted and sentenced prisoner" incarcerated at Sing Sing Correctional Facility in Ossining, New York. Plaintiff was previously incarcerated at Orange County Jail ("OCJ") and many of the facts from the Amended Complaint occurred while Plaintiff was incarcerated at OCJ.

On or about October 24, 2017, Plaintiff went to ORMC for testing to determine whether he had cancer in his left testicle. To conduct testing, ORMC determined that they would administer various liquids to Plaintiff. Prior to the test, Plaintiff inquired why he needed to ingest the liquids. The primary nurse told Plaintiff that the liquids were necessary to allow doctors to take an in-depth look at his left testicle. After receiving the liquids, Plaintiff was placed on a machine to receive a CT scan. At that time, he was given a "second dose" of liquid intravenously. Plaintiff was on the radiation machine for a long time.

Plaintiff has been waiting ever since for the results of the CT scan. Plaintiff is frustrated and worried and has experienced symptoms of radiation sickness such as hair loss, extreme testicle pain, a cyst on his testicle—which has not been removed—and deteriorating teeth. Plaintiff also has slurred speech, a painful, purple tongue, and is having a mental breakdown due to "medical malpractice" and lack of medical professionalism.

A few weeks following the CT scan incident, Plaintiff saw Dr. Feldman at OCJ and Dr. Feldman informed Plaintiff that the CT scan taken at ORMC had nothing to do with checking Plaintiff's left testicle for cancer. On or about December 15, 2017, Plaintiff had a check-up with Dr. Feldman and Dr. Feldman again informed him that the testing he received on October 24, 2017, had nothing to do with Plaintiff's testicles and that staff at ORMC only checked Plaintiff's pelvis and intestines.

As of March 17, 2020, Plaintiff remains in extreme pain in his left testicle. His testicle is the size of a golf ball and feels like it is going to explode. Plaintiff is constantly using the bathroom approximately twenty-five times per day. Most of his bathroom usage is at night and interferes with his ability to get steady sleep. Due to coronavirus, Plaintiff has been unable to obtain a check-up to see if his left testicle is cancerous.

## LEGAL STANDARD ON A MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss is proper unless the complaint "contain[s] sufficient factual matter, sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

Where a motion to dismiss is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "*not* bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678. (quoting *Twombly*, 550 U.S. at 555) (emphasis added).

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claim(s) "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (noting that a claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged")

While it is not necessary for the complaint to assert "detailed factual allegations," it still must allege "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*.

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken*." Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotations and citation omitted). However, when dealing with a *pro se* plaintiff, the Court may consider "materials *outside* the complaint to the extent that they are consistent with the allegations in the complaint." *Gayot v. Perez*, No. 16-CV-8871 (KMK), 2018 WL 6725331, at *4 (S.D.N.Y. Dec. 21, 2018) (emphasis added) (internal quotations, alterations, and citations omitted).

*Pro se* complaints are held to different, more relaxed standards, as courts must construe *pro se* pleadings more liberally than they would for non-*pro se* pleadings. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Further, courts must interpret the *pro se* plaintiff's pleading "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York.*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nonetheless, in order to be entitled to relief, a *pro se* plaintiff's complaint must contain sufficient factual allegations which would plausibly entitle them to relief. *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010). To that point, where an allegation lacks an essential, necessary element to the entitlement of relief, a court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a

duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

The Court liberally interprets Plaintiff's Amended Complaint to allege two causes of action: (1) claims against ORMC and Dr. Feldman for deliberate indifference to medical needs pursuant to 18 U.S.C. § 1983 and (2) claims against ORMC and Dr. Feldman for medical malpractice.

### I. Deliberate Indifference to Medical Needs

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); see also *Paterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York.*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); see also *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

While Plaintiff indicates that he is *currently* a sentenced and convicted individual incarcerated at Sing Sing, he does not explicitly state in his Complaint whether he was a detainee or convicted and sentenced individual at the time the incident occurred. Regardless of his

classification, however, the Constitution requires that prison officials "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment," whereas an inmate's claims arise under "the Cruel and Unusual Punishments Clause of the Eight Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

In either case, to set forth a Section 1983 claim for conditions of confinement, a plaintiff must show that an individual "acted with deliberate indifference to the challenged conditions." *Sanders v. City of New York*, No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018). This deliberate indifference test contains an objective prong and a subjective prong. *Darnell*, 849 F.3d at 29. Under the deliberate indifference test, "[t]he objective prong is the same under either [the Eighth or Fourteenth] analysis: It requires that the deprivation at issue be, 'in objective terms, sufficiently serious.'" *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *9 (S.D.N.Y. Sept. 18, 2019). A plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 30. "There is not 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" Id. at 29 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). When, as here, a plaintiff has alleged deliberate indifference to medical needs that is premised on "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone" if analyzing the nature of the deprivation. *Smith*

*v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Conversely, the subjective prong differs between the Fourteenth and Eighth Amendment analyses. Under the Eighth Amendment, a convicted prisoner must show that a correction officer "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety; the official must both [have been] aware of facts from which the inference could [have been] drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference." *Farmer*, 511 U.S. at 837. On the other hand, under the Fourteenth Amendment, a plaintiff must plausibly allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Strange v. Westchester Cty. Dep't of Corr.*, No. 17-CV-9968 (NSR), 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018) (internal quotations omitted). This standard is "defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts . . . have subjected the detainee to a substantial risk of harm." *Darnell*, 849 F.3d at 30. Because it is unclear whether *pro se* Plaintiff was a pretrial detainee or a convicted prisoner at the time the events in the Amended Complaint occurred, the Court will apply the more lenient Fourteenth Amendment standard.

A. ORMC

In its February 10, 2020, Opinion, the Court dismissed all Section 1983 claims against ORMC and noted that "regardless of the test applied, Plaintiff has failed to establish that ORMC and its employees are state actors under Section 1983." (ECF No. 53 at 13.) The Court dismissed the claims *with prejudice*, noting that "even if granted leave to amend, the Court cannot conclude

7

that Plaintiff could plausibly allege that the mishandling of medical testing conducted by ORMC's employees amounts to state action." (*Id.*) Accordingly, to the extent Plaintiff is seeking to bring a Section 1983 claim against ORMC for deliberate indifference, that claim is dismissed.[2]

### B. Dr. Feldman

Liberally construed, the Amended Complaint alleges that Plaintiff was subject to unnecessary radiation exposure at ORMC and that Plaintiff received inadequate treatment as to his left testicle. As to Plaintiff's injuries based on exposure to radiation, Plaintiff has failed to plead any personal involvement on the part of Dr. Feldman.

Plaintiff pleads that undue delay in receiving medical treatment resulted in serious pain to his left testicle. However, Plaintiff also indicates that he had check-ups with Dr. Feldman and fails to indicate what deficiencies in those check-ups worsened his pain. *See Cuffee v. City of New York*, 2017 WL 1232737, at *9 (S.D.N.Y. Mar. 3, 2017), *adopted by*, 2017 WL 1134768 (S.D.N.Y. Mar. 27, 2017) (explaining that plaintiff's deliberate indifference claims failed because he had "given simply no indication as to how the delay in his treatment . . . worsened his condition"). Accordingly, the Court finds Plaintiff fails to meet the objective test.

Even if Plaintiff properly pled the objective prong, he fails to meet the subjective prong. There are no allegations in the Amended Complaint that suggest Dr. Feldman acted intentionally or recklessly with respect to a serious or unreasonable risk. In fact, as indicated above, Dr. Feldman had check-ups with Plaintiff regarding his left testicle. Accordingly, Plaintiff's deliberate indifference claims are dismissed.

### II.     Medical Malpractice

---

[2] The Court notes that Plaintiff's claim would fail on the merits for the same reasons it did in its February 10, 2020 Opinion. The Amended Complaint is nearly identical to Plaintiff's original Complaint and fails to allege any facts suggesting ORMC is a state actor or that the medical testing amounted to state action.

Under New York Law, "[t]he essential elements of a medical malpractice claim are a departure from good and accepted medical practice and evidence that such departure was a proximate cause of plaintiff's injury." *Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 252 (S.D.N.Y. 2013) (quoting *Williams v. Sahay*, 783 N.Y.S.2d 664, 666 (App. Div. 2d Dep't 2004)).

A. *Merits*

The Amended Complaint again fails to allege facts suggesting that the care provided by ORMC or Dr. Feldman resulted from deviations from accepted medical practices. The crux of the Amended Complaint is that ORMC subjected Plaintiff to unnecessary radiation and Defendants failed to examine and treat Plaintiff's testicle. However, nothing in the Amended Complaint suggests that a CAT scan was a departure from good and accepted medical practice. Further, while Plaintiff indicates his left testicle worsened, nothing in the Amended Complaint indicates that Dr. Feldman provided Plaintiff with care that deviated from accepted medical practices or that Dr. Feldman's care caused the testicle to worsen. Accordingly, Plaintiff's medical malpractice claims are dismissed.

B. *Supplemental Jurisdiction*

Further, even if Plaintiff had sufficiently plead his medical malpractice claims, the Court alternatively declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, given that Plaintiff has failed to sufficiently plead any claims arising under federal law. *See In re Merrill Lynch Ltd. Partnerships Lit.*, 154 F.3d 56, 61 (2d Cir. 1998) ("[The Second Circuit] and the Supreme Court have held that when [] federal claims are dismissed the 'state claims should be dismissed as well.'"); *Bennett v. Care Corr. Sol. Med. Contractor*, No. 15 Civ. 3746 (JCM), 2017 WL 1167325, at *10 (S.D.N.Y. Mar. 24, 2017) (dismissing state-law claims where Court would only retain jurisdiction over these claims based on supplemental jurisdiction).

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED and Plaintiff's claims against Defendants are DISMISSED. The Clerk of the Court is respectfully directed to (1) terminate the motions at ECF No. 71 & 77; (2) mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF, (3) show service on the docket, and (4) close this action.

Dated: 7/27/2021

White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge